## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

NORMA J. QUALLS,          )
                                     )
        **Plaintiff,**        )
                                     )
**v.**                           )      **Case No. CIV-14-134-SPS**
                                     )
**CAROLYN COLVIN,**       )
**Acting Commissioner of the Social**  )
**Security Administration,**       )
                                     )
        **Defendant.**     )

## OPINION AND ORDER

The claimant Norma J. Qualls requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the decision of the Commissioner is hereby REVERSED and the case is REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A).

Social security regulations implement a five-step sequential process to evaluate a

disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision

to two inquiries: whether the decision was supported by substantial evidence and whether

correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th

Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'"

*Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v.*

*NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th

Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the

Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951).  *See also*

*Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born November 25, 1961, and was fifty-one years old at the time

of the administrative hearing (Tr. 29).  She completed twelfth grade, and has worked as a

cashier/stocker (Tr. 18, 176).  The claimant alleges she has been unable to work since

February 7, 2006, due to neck, and back pain, left shoulder problems, and problems with

both wrists (Tr. 175).

## Procedural History

On February 7, 2011, the claimant applied for disability insurance benefits under

Title II of the Social Security Act, 42 U.S.C. §§ 401-434.  Her application was denied.

ALJ Bernard Porter conducted an administrative hearing and determined that the

claimant was not disabled in a written opinion dated March 1, 2013 (Tr. 9-19).  The

Appeals Council denied review, so the ALJ's opinion represents the Commissioner's

final decision for purposes of this appeal.  *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation.  He found that

the claimant had the residual functional capacity (RFC) to perform light work, as defined

in 20 C.F.R. § 404.1567(b), *i. e.*, she could lift/carry/push/pull ten pounds frequently and

twenty pounds occasionally, stand/walk/sit each for six hours in an eight-hour workday,

except that she could only occasionally use hand controls, reach overhead, handle, finger,

and feel.  Additionally, he found she could occasionally climb ramps and stairs, but never

climb ladders or scaffolds, crawl, or be exposed to temperature extremes. Finally, he found she should be allowed to alternate sitting and standing every thirty minutes (Tr. 12-13). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *i. e.*, parking lot attendant and furniture rental clerk (Tr. 17-19).

**Review**

The claimant contends that the ALJ erred by: (i) failing to develop the evidence, (ii) failing to properly assess his RFC, and (iii) by finding there were other jobs she could perform. The Court agrees that the ALJ failed to properly assess the claimant's RFC at step four, and the decision of the Commissioner is therefore reversed.

The ALJ determined that the claimant had the severe impairments of carpal tunnel syndrome, lumbar disc disease, cervical disc disease, impingement syndrome, degenerative joint disease of the shoulder, and torn rotator cuff in the left shoulder requiring corrective surgery (Tr. 11). The record reflects that the claimant underwent a carpal tunnel release surgery on the left wrist in April 2005 (Tr. 243). Complaints of neck pain and a resultant MRI revealed mild loss in height of the C4-5 intervertebral disc with a minor annular disc bulger, but no central canal stenosis or exiting nerve root compression (Tr. 260). By October 2006, continued neck, shoulder, and arm pain resulted in a right carpal tunnel surgery, and left decompression of the shoulder and rotator cuff repair (Tr. 261-268).

The claimant nevertheless continued to complain of back pain, and a 2008 MRI revealed a small disk bulge at L3-4 on the left side, which was slightly protruding along

the L3 nerve root at the L3-4 level along with traversing and exiting nerves (Tr. 288). In 2009, Dr. Martin Martucci reported that they had attempted epidural steroid injections and low-dose medication management to treat low back and leg pain and while helpful, the claimant still experienced significant pain (Tr. 329). He did not believe she could return to work at that time (Tr. 329). The claimant's back pain was characterized as lumbosacral spondylosis in February 2010, and Dr. Martucci declared she had reached maximum medical improvement at that point, with continuance on opioid pain medication management (Tr. 246).

On September 10, 2010, Dr. Ann S. May prepared a letter assessing the claimant's impairment rating for workers' compensation purposes (Tr. 298). Dr. May's ultimate recommendation was that the claimant could not return to her previous employment and that she should have an assessment for vocational rehabilitation for employment not requiring repetitive motion of the upper extremities (Tr. 301). Dr. May determined that the claimant had a 40% right hand permanent partial impairment based on surgical intervention and peripheral nerve injury, which converts to a 36% upper extremity impairment rating (Tr. 300). Likewise, she found a 36% left hand permanent partial impairment, with a 32% upper extremity impairment rating (Tr. 300). She then concluded that the claimant had sustained a permanent partial impairment of 35% to the whole person (58% to the upper extremity) (Tr. 300).

On April 27, 2011, Dr. William Cooper, D.O., conducted a consultative physical examination (Tr. 356). Upon exam, he noted that she had pain with range of motion testing of the left shoulder, 5/5 grip strength and ability to perform gross and fine tactile

manipulation, pain with full range of motion of the lumbar spine, positive Phalen and Tinels bilaterally, and negative Romberg and Babinski tests (Tr. 358).

On June 6, 2011 and September 22, 2011, state reviewing physicians determined that the claimant did not have a severe impairment as of her date last insured (March 31, 2011) (Tr. 373-374).

On January 23, 2012, Dr. Myra Gregory, D.O. completed a physical Medical Source Statement (MSS), indicating that the claimant could lift/carry ten pounds frequently and occasionally, stand/walk less than two hours in an eight-hour workday, and that she must periodically alternate sitting and standing, due to pain in left hip and inside of the leg (Tr. 375-376). She additionally indicated that the claimant's upper and lower extremities were limited in the ability to push/pull, noting that her grip strength was about normal but she could not sit or stand very long and had to change positions frequently (Tr. 376). Additionally, she found the claimant could only occasionally engage in postural limitations, and that her manipulative functions were limited due to back pain and discomfort (Tr. 376-377). She also found the claimant could only tolerate limited exposure to temperature extremes, humidity/wetness, vibration, hazards, and fumes, odors, chemicals, and gases (Tr. 377).

The claimant asserts that the ALJ erred in formulating her RFC, and the Court agrees. The medical opinions of treating physicians are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d

1297, 1300 (10th Cir. 2003). When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight. The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins*, 350 F.3d at 1300-1301, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301 [quotations and citations omitted].

Likewise, the opinions of physicians such as consultative examiners must be evaluated for the proper weight. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider [the *Watkins*] factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

In his written opinion, the ALJ summarized the claimant's hearing testimony and much of the medical record. The ALJ found the claimant not credible based on daily activities, and stated that he gave her the benefit of the doubt but that her allegations were "not generally credible" (Tr. 15). As to the opinion evidence, the ALJ gave significant weight to the opinions of the state reviewing physicians who found the claimant *did not even have a severe impairment*, some weight to a restriction to lifting only twenty pounds and no performing repetitive activity such as painting or wallpapering, and significant weight to Dr. Anagnost's opinion that she could not lift more than twenty-five pounds (Tr. 16-17). He then gave little weight to Dr. May's opinion because it is an adversarial compensation system, and "[t]he physicians used by either party in workers' compensation cases are often biased and do not provide truly objective opinions" (Tr. 17). He then also gave little weight to Dr. Gregory's opinion that she could only perform sedentary work (Tr. 17).

The ALJ was required to evaluate for controlling weight any opinions as to the claimant's functional limitations expressed by her treating physicians. The ALJ erred in failing to conduct the requisite analysis with regard to the treating, consultative, and reviewing physician opinions in the record. Although the ALJ noted the proper analysis at the outset of step four, he failed to properly apply it when he ignored the evidence in the record and instead imposed an RFC that would avoid a finding of disabled, while improperly rejecting the evidence as to her limitations, particularly related to standing, walking, and manipulative limitations. Furthermore, the ALJ's rejection of the workers' compensation assessment was not based on the factors as stated above, but instead on his

own biases against their findings. Although the ALJ was not required to adopt the assessment without analysis, he was not permitted to reject it out of hand with a general, unsubstantiated assertion that the physician conducting *this* assessment was biased. *See Langley v. Barnhart,* 373 F.3d 1116, 1119 (10th Cir. 2004) ("Even if a treating physician's opinion is not entitled to controlling weight, [t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [20 C.F.R. § 416.927]."), *quoting Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003).

More particularly, the ALJ engaged in improper picking and choosing in order to avoid finding the claimant could only perform sedentary work. This is particularly evident where the ALJ gave "significant weight" to the state reviewing physician opinions, who found the claimant did not even have a severe physical impairment and thus did not even provide a suggested RFC assessment. Nevertheless, the ALJ cited their half-page notations as a "thorough review of the record" (Tr. 17). Furthermore, the vocational expert's testimony from the administrative hearing was that if the claimant were limited to sedentary work with anything less than frequent reaching, handling, fingering, or feeling, there would be no jobs available (Tr. 49). *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-386 (7th Cir. 1984).

Because the ALJ failed to properly evaluate *all* the claimant's impairments and the opinion evidence of record, the decision of the Commissioner is therefore reversed and the case remanded to the ALJ for further analysis of the claimant's impairments. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 28th day of September, 2016.

_____

**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**